# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

DOUGLAS TAYLOR,                       )    Case No. EDCV 14-1190-AG (JEM)
                                      )
                    Plaintiff,        )
                                      )    MEMORANDUM AND ORDER
          v.                          )    DISMISSING COMPLAINT WITH LEAVE
                                      )    TO AMEND
SAN BERNARDINO COUNTY SHERIFF'S       )
DEPARTMENT, et al,                    )
                                      )
                    Defendants.       )
_____)

       On December 9, 2014, Douglas Taylor ("plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

       In accordance with the provisions of the Prison Litigation Reform Act of 1995, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).  This screening is governed by the following standards:

       A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't,

1   901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim on

2   which relief may be granted, allegations of material fact are taken as true and construed in

3   the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir.

4   1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual

5   allegations."  Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of

6   a civil rights complaint may not supply essential elements of the claim that were not initially

7   pled."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

8       Although a complaint "does not need detailed factual allegations" to survive

9   dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic

10  recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly,

11  550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in

12  Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations

13  sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely

14  possible or conceivable.  Id. at 557, 570.

15      Simply put, the complaint must contain "enough facts to state a claim to relief that is

16  plausible on its face."  Twombly, 550 U.S. at 570.  A claim has facial plausibility when the

17  complaint presents enough facts "to draw the reasonable inference that the defendant is

18  liable."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability

19  requirement, but "it asks for more than a sheer possibility that a defendant has acted

20  unlawfully."  Id.  A complaint that pleads facts that are merely consistent with liability stops

21  short of the line between possibility and plausibility.  Id.

22      In a pro se civil rights case, the complaint must be construed liberally to afford

23  plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,

24  623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,

25  pro se litigants are generally entitled to a notice of a complaint's deficiencies and an

26  opportunity to amend prior to the dismissal of an action.  Id. at 623.  Only if it is absolutely

27  clear that the deficiencies cannot be cured by amendment should the complaint be

28

dismissed without leave to amend.  Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

After careful review and consideration of the Complaint under the relevant standards and for the reasons discussed below, the Court finds that the Complaint must be **DISMISSED WITH LEAVE TO AMEND.**

### ALLEGATIONS OF COMPLAINT

Plaintiff's claims arise out of his confinement at the High Desert Detention Center ("H.D.D.C.").  He has sued the following defendants:  the San Bernardino County Sheriff's Department ("Sheriff's Department"); H.D.D.C. officials Ciolli, Alexander, McGee, Luster, Fealey, Marshall, Hoffman, Kelly, Marks, Sullivan, Otey, Sinclair, Hamilton, Pollick, De Los Santos, Mosley, Anderson, and Marhoofer; Office of Internal Affairs official Cox; San Bernardino County Sheriff John McMahon; Dr. Jeffery Haga; two Doe deputies; and medical Doe defendants.  Plaintiff sues defendants McMahon, Marhoofer, and Haga and certain Doe defendants in their official as well as individual capacities, and the other defendants solely in their individual capacities.  (Complaint ¶¶ 4-16.)

Plaintiff alleges that on May 6, 2014, at about midnight, defendants Ciolli and Alexander came to his cell to deliver his legal mail.  (Complaint ¶¶ 18-22.)  When plaintiff complained about the late hour, Ciolli became angry and snatched back the mail.  (Id. at ¶¶ 24-26.)  Plaintiff complained and asked for a grievance form.  (Id. at ¶ 27.)  Shortly afterwards, Ciolli brought him a grievance form, but asked plaintiff whether he hadn't "learned his lesson yet" and told him "not to get too comfortable."  (Id. at ¶¶ 30-37.)

Fifteen minutes later, plaintiff was again roused from bed when Ciolli, Alexander, McGee, and Luster came to his cell.  Plaintiff believes that Fealey was also there. (Complaint ¶¶ 39-40.)  McGee ordered plaintiff to get dressed and "cuff up" because he was "going outside."  (Id. at ¶ 41.)  As plaintiff turned to collect some of his legal documents, he heard Ciolli say "Do it!"  (Id. at ¶ 43.)  McGee reached his arm through the tray slot and pepper-sprayed plaintiff in the face.  (Id. at ¶¶ 44-45.)  Plaintiff dropped to his knees behind his cellmate and McGee ordered the cellmate to get out of the way.  Instead, the cellmate

held the mattress as a barrier to shield plaintiff.  (Id. at ¶¶ 46-47.)  McGee closed the tray slot, trapping plaintiff and his cellmate with the fumes.  (Id. at ¶ 48.)  Multiple deputies gathered around and one deputy asked plaintiff's cellmate whether he and plaintiff had really refused to "cuff up."  (Id. at ¶¶ 49-51.)  Plaintiff and his cellmate denied it and were handcuffed.  (Id. at ¶¶ 52-55.)

Plaintiff was placed in a holding cell and left there for hours, still handcuffed and with the pepper spray on him.  (Complaint ¶ 56.)  Deputies taunted him on account of the tears caused by the pepper spray in his eyes.  (Id. at ¶ 57.)  Due to plaintiff's repeated complaints, he was eventually taken to a nurse, Jane Doe No. 1.  He told her that he suffered from asthma, could not breathe or see, and that his skin was "on fire," but she merely squirted a wash solution into his eyes and said that he was fine.  (Id. at ¶¶ 66-69.)

Plaintiff was not afforded an opportunity to rinse off the pepper spray from his face, hair, and body for three days.  (Complaint ¶ 64.)  Defendants Sinclair and Otey claimed that the reason was a broken shower.  (Id. at ¶ 65.)  Plaintiff's further attempts to obtain medical treatment were ignored.  (Id. at ¶ 70.)

While plaintiff was still in the holding cell, his cell was searched and thirty pages of his legal documents were taken by an unknown deputy.  (Complaint ¶¶ 58-59.)  Plaintiff was not notified that his legal documents were taken and only noticed the loss three weeks later.  (Id. at ¶ 60.)

Plaintiff was placed in segregation and charged with a "trumped up" disciplinary violation.  Ciolli, who conducted the disciplinary hearing, found plaintiff guilty and ordered him confined to segregation for 25 days.  (Complaint ¶¶ 62-63.)

Plaintiff wrote letters to the Sheriff's Department–Internal Affairs Division.  (Complaint ¶ 71.)  In response, defendant Marshall came to his cell and told him that his administrative remedies were exhausted.  (Id. at ¶¶ 72-73.)  Plaintiff submitted grievances to get written confirmation of the exhaustion, but they were ignored or denied.  (Id. at ¶¶ 74-76.)  Plaintiff's personal property, which was in storage at the time, was subsequently misplaced.  (Id. at ¶ 78.)  Plaintiff filed a grievance.  (Id. at ¶ 79.)  Ciolli, Alexander, and Luster came to his cell to

confront him about his continued use of the grievance process. "Their presence was menacing" and they were verbally abusive. (Id. at ¶¶ 80-82.) During the following two weeks, plaintiff was falsely charged with two more disciplinary violations. (Id. at ¶ 84.) His personal property was taken and again misplaced. The lost property included plaintiff's prescription glasses. (Id. at ¶¶ 85-86.)

As a result of his complaints, plaintiff was moved to the West Valley Detention Center ("W.V.D.C."). (Complaint ¶ 87.) On June 18, 2014, he was seen by an outside "doctor/optometrist" at the Arrowhead Regional Medical Center and was prescribed medication to treat persistent swelling, dryness and irritation resulting from the pepper spray. However, Dr. Haga at the Arrowhead Regional Medical Center "refused to process this medical treatment" until July 28, 2014, despite plaintiff's requests. (Id. at ¶¶ 88-89.) At W.V.D.C., plaintiff filed 25 grievances between June 18, 2014 and August 10, 2014, but did not receive any responses to them. (Id. at ¶¶ 90-93.) As of August 11, 2014, plaintiff still had not received replacement glasses or compensation for his lost property. (Id. at ¶ 94.)

Plaintiff asserts the following federal claims for relief: (1) Eighth Amendment claims against Ciolli, Alexander, McGee, Luster, and Fealey based on the use of pepper spray by McGee at Ciolli's direction and on the other defendants' failure to intervene; (2) First Amendment and due process claims against Ciolli, Alexander, McGee, Luster, Fealey, Marshall, Hoffman, Pollick, Marks, Otey, Sinclair, and Pollick for denying plaintiff access to the grievance process and/or retaliating against him for using the grievance process; (3) a due process claim against Ciolli based on his presiding over plaintiff's disciplinary hearing even though he was personally involved in the incident giving rise to the charge; (4) a due process claim against Alexander based on plaintiff's appeal of his disciplinary conviction; (5) a retaliation claim against Ciolli; (6) Eighth Amendment and due process claims against Otey, Luster, and Mosley based on the confiscation and loss of plaintiff's property; (7) a First Amendment claim against Pollick for refusing to mail plaintiff's legal mail containing a "scathing complaint" to the judge in his criminal action; (8) Eighth Amendment claims against Sinclair, Otey, Pollick, McGee, Luster, and Fealey for denying plaintiff a shower for

three days after being pepper-sprayed; (9) Eighth Amendment claims against Dr. Haga and the medical Doe defendants for failing to provide medical treatment for vision complications resulting from the pepper spray and failing to replace plaintiff's glasses; and (10) claims under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments against Sheriff John McMahon and defendants Marhoofer, Anderson, and Cox for failing to act on plaintiff's prior complaints.  (Complaint at 14-17.)  Plaintiff seeks damages, declaratory relief, and injunctive relief ordering the medical defendants to replace his glasses and provide medical care for his injuries, and ordering Ciolli and Alexander to expunge his disciplinary convictions from his record.  (Complaint at 17-20.)

**DISCUSSION**

**I.    A PRETRIAL DETAINEE CANNOT ASSERT CLAIMS UNDER THE EIGHTH AMENDMENT.**

Plaintiff asserts claims under the Eighth Amendment.  However, he describes himself as a "pre-sentenced state detainee" representing himself in his criminal case.  (Complaint at 2, 7.)  The Cruel and Unusual Punishment Clause of the Eighth Amendment applies only to convicted prisoners.  See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977).  If plaintiff was a convicted prisoner at the time of the incidents giving rise to his claims, his claims arise under the Eighth Amendment.  If plaintiff was detained as a pretrial detainee, his claims arise under the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  In either case, plaintiff's claims are governed by Eighth Amendment standards.  See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 200; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

**II.   THREE OF PLAINTIFF'S CLAIMS MAY WITHSTAND SCREENING.**

The Court finds that the following claims currently withstand screening:  (1) plaintiff's excessive force claims against defendants Ciolli, Alexander, McGee, Luster, and Fealey based on the use of pepper spray against him; (2) plaintiff's due process claim against

6

1  defendant Ciolli arising from plaintiff's disciplinary hearing;[1] and (3) plaintiff's First

2  Amendment claim against defendant Pollick for interference with his legal mail.[2]

3  **III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST SINCLAIR, OTEY, POLLICK,**

4  **McGEE, LUSTER, AND FEALEY BASED ON DENIAL OF SHOWER FOLLOWING**

5  **PEPPER SPRAY.**

6         Plaintiff asserts Eighth Amendment claims against defendants Sinclair, Otey, Pollick,

7  McGee, Luster, and Fealey for denying him a decontamination shower for three days after

8  he was pepper-sprayed.  (Complaint ¶ 104.)

9         An official's "deliberate indifference to a prisoner's serious illness or injury" violates

10  the prisoner's Eighth Amendment right to be free of cruel and unusual punishment.  Estelle

11  v. Gamble, 429 U.S. 97, 105 (1976).  A deliberate indifference claim has both an objective

12  and a subjective component: a prisoner must allege an objectively sufficiently serious

13  deprivation and a sufficiently culpable state of mind on the part of the official.  Farmer v.

14  Brennan, 511 U.S. 825, 834 (1994).  The subjective component is satisfied only when the

15  official knows of and disregards an excessive risk to inmate health or safety.  The official

16  must both be aware of the facts from which the inference could be drawn that a substantial

17

18

19

20  [1]    The Court's conclusion that plaintiff's due process claim against Ciolli withstands screening
rests on the assumption that plaintiff did not lose any time credits as a result of his disciplinary
21  conviction, since he does not allege that he was assessed a credit forfeiture.  (Complaint ¶ 63.)  If
plaintiff lost time credits, he cannot challenge his disciplinary conviction in this Section 1983 action,
22  but must do so by a petition for a writ of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475,
488-89, 500 (1973) (prisoners could not obtain restoration of time credits through Section 1983
23  action); see also Heck v. Humphrey, 512 U.S. 477, 486-87 (1997) (Section 1983 claims for damages
that imply invalidity of conviction or sentence do not accrue until the conviction or sentence has been
invalidated by other means); Edwards v. Balisok, 520 U.S. 641, 646-47 (1974)(applying Heck rule to
24  Section 1983 challenge to the procedures used to revoke time credits).

25  [2]    The Court notes that plaintiff's interference with mail claim against Pollick arises out of an
incident entirely separate from the May 6, 2014 incident and involves different questions of law.
26  Thus, depending on the viability of plaintiff's other claims against Pollick, the factual bases for which
are currently unclear, plaintiff may not be able to pursue this claim in the same action as his claims
27  against other defendants.  See Fed. R. Civ. P. 20(a)(2) (a plaintiff may bring claims against multiple
defendants if (1) the claims arise out of the same transaction or occurrence, or series of transactions
28  and occurrences, and (2) there are common questions of law or fact).

1   risk of serious harm exists, and must actually draw the inference.  Id. at 837.  Mere
2   negligence does not suffice.  Id. at 835; Estelle, 429 U.S. at 105-06.

3         Here, plaintiff alleges that he was sprayed in the face with pepper spray and suffered
4   from burning in his eyes, skin, and lungs.  (Complaint ¶¶ 45, 55.)  Several hours later he
5   was seen by a nurse, who squirted wash solution into his eyes.  (Id. at ¶¶ 66-62.)  He did
6   not did not receive a shower until three days later and was not able to rinse the pepper
7   spray residue from his face and body during that time.  (Id. at ¶ 64.)

8         At this early stage of the action, these allegations are sufficient to meet the objective
9   prong of a deliberate indifference claim.  See Clement v. Gomez, 298 F.3d 898, 905 (9th
10  Cir. 2002) (denial of medical attention and showers for four hours after being sprayed with
11  pepper spray was sufficient to state a claim).  Plaintiff, however, has not sufficiently alleged
12  deliberate indifference on the part of the defendants against whom he asserts this claim.
13  There are no factual allegations from which the Court could infer that defendants Sinclair,
14  Otey, Pollick, McGee, Luster, and Fealey were each aware of plaintiff's need to rinse off the
15  pepper spray residue and refused to provide a means of doing so.  Contrast Reyes v.
16  McGrath, 444 Fed. Appx. 126, 126-27 (9th Cir., Jul. 19, 2011) (plaintiff stated a deliberate
17  indifference claim against defendants who were aware of potential harmful effects of pepper
18  spray in general and of the specific symptoms suffered by plaintiff after his exposure, and
19  nevertheless refused to provide means to mitigate effects of pepper spray).  Plaintiff alleges
20  that Sinclair and Otey claimed that he was denied a shower because the shower was
21  broken, but it is unclear whether they said this when plaintiff was requesting a shower or
22  later, as an explanation for the delay.  (Complaint ¶ 65.)

23        Accordingly, plaintiff's deliberate indifference claims against Sinclair, Otey, Pollick,
24  McGee, Luster, and Fealey based on the denial of a decontamination shower must be
25  dismissed.
26  / / /
27  / / /
28  / / /

IV.     **PLAINTIFF FAILS TO STATE A RETALIATION CLAIM.**

Plaintiff asserts retaliation claims against defendants Ciolli, Alexander, McGee, Luster, Fealey, Marshall, Hoffman, Pollick, Marks, Otey, Sinclair, and Pollick.  (Complaint ¶¶ 98, 101.)

Prison officials may not retaliate against prisoners for exercising their First Amendment rights to pursue litigation or file administrative grievances.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  A viable claim of First Amendment retaliation entails five basic elements:  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct, and (4) the adverse action chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose.  Id. at 567-68.  Plaintiff has the initial burden of proving that the exercise of his First Amendment rights was a substantial or motivating factor behind defendant's conduct.  Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Plaintiff also bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Here, plaintiff characterizes the following acts as retaliatory: Ciolli's finding that he was guilty of a disciplinary violation in connection with the May 6, 2014 incident; and the subsequent issuance of "false discipline reports."  (Complaint ¶¶ 101.)  However, plaintiff's allegations are insufficiently specific to support a plausible inference that each of the defendants against whom plaintiff asserts a retaliation claim was motivated by a desire to retaliate against him for his filing of grievances, rather than acting for some other motive.  See Iqbal, 556 U.S. at 678.  In fact, plaintiff only attempts to allege the requisite causal link as to Ciolli, Alexander, and Luster.  He alleges that Ciolli, Alexander, and Luster confronted him about his use of the grievance process, and that during the two weeks following the confrontation he was falsely charged with two more disciplinary violations.  (Complaint ¶¶ 81-84.)  However, plaintiff does not allege that it was Ciolli, Alexander, and Luster who

1  wrote up the disciplinary reports, nor does he provide any information about the subject

2  matter of the reports.  Moreover, it appears that this confrontation took place after Ciolli

3  found plaintiff guilty of the disciplinary violation in connection with the May 6, 2014 incident,

4  and thus cannot show that Ciolli did so for retaliatory reasons.  As for defendants McGee,

5  Fealey, Marshall, Hoffman, Pollick, Marks, Otey, Sinclair, and Pollick, it is unclear which of

6  their acts plaintiff contends were retaliatory.  Indeed, the Complaint contains no factual

7  allegations about Hoffman and Marks.  Thus, plaintiff has not adequately alleged either

8  retaliatory acts or retaliatory motivation on the part of these defendants.

9       Accordingly, plaintiff's retaliation claims must be dismissed.

10 **V.    PLAINTIFF FAILS TO STATE A CLAIM BASED ON THE PROCESSING OF HIS**

11     **GRIEVANCES.**

12      Plaintiff asserts First Amendment and due process claims against defendants Ciolli,

13 Alexander, McGee, Luster, Fealey, Marshall, Hoffman, Pollick, Marks, Otey, Sinclair, and

14 Pollick for denying him access to the grievance process.  He also complains that defendant

15 Alexander handled his appeal of his disciplinary conviction even though Alexander was

16 personally involved in the underlying incident.  (Complaint ¶¶ 98, 100.)  In addition, plaintiff's

17 claims against defendant Marshall appear to rest purely on the allegation that Marshall told

18 him that his administrative remedies with respect to the May 6, 2011 incident were

19 exhausted but never provided a written confirmation.  (Id. at ¶¶ 74-76.)

20      The existence of a prison grievance procedure does not create any substantive rights

21 enforceable under the Due Process Clause.  See, e.g., Ramirez v. Galaza, 334 F.3d 850,

22 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison

23 grievance procedure"); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) ("With

24 respect to the Due Process Clause, any right to a grievance procedure is a procedural right,

25 not substantive one.  Accordingly, a state's inmate grievance procedures do not give rise to

26 a liberty interest protected by the Due Process Clause.") (internal citations omitted); Mann v.

27 Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a

28 grievance procedure.").  Thus, plaintiff cannot assert due process claims against defendants

1    based solely on their handling of his grievances.  See McRoy v. Roe, 509 Fed. Appx. 660,

2    660 (9th Cir., Feb. 19, 2013) (affirming dismissal of claims arising from defendants'

3    processing of grievances) (citing Ramirez).

4          Plaintiff also does not state a cognizable First Amendment claim on this basis.

5    Prisoners have a First Amendment right to file prison grievances.  Brodheim v. Cry, 584

6    F.3d 1262, 1269 (9th Cir. 2009).  For this reason, prison officials may not retaliate against

7    plaintiff for filing grievances.  Id.  However, the Petition Clause of the First Amendment does

8    not impose an obligation on officials to respond to the grievances.  See Smith v. Ark. State

9    Highway Emps., Local 1315, 441 U.S. 463, 465 (1979) ("the First Amendment does not

10   impose any affirmative obligation on the government to listen, to respond ...."); Trentadue v.

11   Integrity Comm., 501 F.3d 1215, 1237 (10th Cir. 2007) ("the right to petition confers no

12   attendant right to a response from the government"); We the People Foundation, Inc. v.

13   United States, 485 F.3d 140, 141 (D.C. Cir. 2007) (the First Amendment does not

14   encompass a right "to receive a government response to or official consideration of a

15   petition for redress of grievances").  Thus, plaintiff cannot assert First Amendment claims

16   against defendants based on a failure to respond to his grievances.

17         Accordingly, plaintiff fails to allege First Amendment or due process claims based on

18   the handling of his administrative appeals.

19   **VI.    PLAINTIFF FAILS TO STATE A CLAIM BASED ON THE CONFISCATION OF HIS**

20         **PROPERTY.**

21         Plaintiff asserts due process claims against defendants Otey, Luster, and Mosley

22   based on the loss of his personal property, which he believes was deliberately misplaced.

23   (Complaint ¶ 102.)

24         A negligent or intentional deprivation of property under color of state law does not

25   constitute a violation of the procedural requirements of the Due Process Clause if state law

26   affords plaintiff a meaningful post-deprivation remedy.  Hudson v. Palmer, 468 U.S. 517,

27   533 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by*

28   Daniels v. Williams, 474 U.S. 327 (1986); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.

1994).  The Ninth Circuit has held that California law provides an adequate post-deprivation remedy for property deprivations caused by public officials.  Barnett, 31 F.3d at 816.  It is immaterial whether plaintiff succeeds in obtaining redress through these alternate remedies; it is their mere existence that bars him from pursuing a Section 1983 due process claim. Willoughby v. Luster, 717 F. Supp. 1439, 1443 (D. Nev. 1989); see also Dennison v. Ryan, 552 Fed. Appx. 414, 418 (9th Cir., Apr. 9, 2013) (inmate's inability to access the grievance procedure regarding his property loss did not render his postdeprivation remedy inadequate under Hudson).

Accordingly, plaintiff's due process claims based on the loss of his property must be dismissed.

## VII.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST DR. HAGA AND CANNOT PURSUE THAT CLAIM IN THIS ACTION.

Plaintiff asserts a deliberate indifference claim against Dr. Haga, who he contends is employed by the Sheriff's Department "via Arrowhead Regional Medical Center."  Plaintiff alleges that on June 18, 2014, an outside "doctor/optometrist" prescribed him medication to treat swelling, dryness, and irritation resulting from the pepper spray, but Dr. Haga refused to "process this medical treatment" until July 28, 2014, although plaintiff requested him to do so.  (Complaint ¶¶ 14, 89, 105.)

Under Fed. R. Civ. P. 20(a), a plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011).  Plaintiff's claim against Dr. Haga arises out of his medical care at the Arrowhead Regional Medical Center, an entirely different transaction or occurrence than his claims against the H.D.D.C. defendants.  Although plaintiff's claim against Dr. Haga is related to the May 6, 2014 incident in the sense that his eye problems stemmed from the pepper spray used against him, it rests on entirely different facts involving different defendants, and is governed by different legal principles.  The claim does not arise out of the same "transaction, occurrence, or series of transactions" as plaintiff's other claims, and there is no "question of law or fact common to all defendants."  Fed. R. Civ. P. 20 (a).  Thus,

1  joinder of this claim with plaintiff's claims against the other defendants is improper.  See,

2  e.g., 05-cv-1022-YNP PC,  Barnett v. Norman, 2010 WL 1006525, at *3-4 (E.D. Cal., Mar.

3  17, 2010) (allowing plaintiff to proceed on claims concerning the use of excessive force by

4  correctional officers and dismissing as improperly joined claims concerning improper

5  medical treatment for injuries sustained from the use of excessive force, the mishandling of

6  evidence from the use of force incident, and the issuance of a false disciplinary report

7  stemming from the use of force incident because, "[a]lthough all the incidents are related in

8  the sense that they all stem from the use of excessive force . . . , the incidents are factually

9  distinct because proving Plaintiff's legal claims related to each incident involves proving

10 discrete sets of facts regarding the conduct of separate defendants.").

11      Furthermore, even assuming, arguendo, that plaintiff can properly pursue this claim

12 in this action, it does not withstand screening.  Failure to provide medical care violates the

13 Eighth Amendment if it amounts to deliberate indifference to a prisoner's serious medical

14 needs.  Estelle, 429 U.S. at 104.  A determination of "deliberate indifference" involves an

15 examination of two elements:  the seriousness of the prisoner's medical need; and the

16 nature of the defendant's response to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059

17 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d

18 1133 (9th Cir. 1997) (en banc).  A serious medical need exists if failure to treat the condition

19 could result in further significant injury or the unnecessary and wanton infliction of pain.

20 McGuckin, 974 F.2d at 1059.  Deliberate indifference requires that defendants purposefully

21 ignore or fail to respond to the prisoner's pain or medical need.  Id. at 1060.  Deliberate

22 indifference "may appear when prison officials deny, delay or intentionally interfere with

23 medical treatment, or it may be shown in the way in which prison physicians provide medical

24 care."  Id. at 1059; see Estelle, 429 U.S. at 104-05.  When medical treatment is delayed

25 rather than denied, the delay generally amounts to deliberate indifference only if it caused

26 harm.  McGuckin, 974 F.2d at 1060; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.

27 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

28

As a general matter, a difference of opinion between an inmate and medical staff, or among the inmate's physicians, as to the nature of appropriate medical treatment is insufficient, as a matter of law, to constitute deliberate indifference.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  An inadvertent or negligent failure to provide adequate medical care also does not constitute deliberate indifference.  Estelle, 429 U.S. at 105-06.  An inmate asserting a deliberate indifference claim against medical personnel must show that they chose, in conscious disregard of an excessive risk to the inmate's health, a course of treatment medically unacceptable under the circumstances. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

Here, plaintiff alleges that there was a 40-day delay in receiving medication to treat continuing eye symptoms caused by the pepper spray, and that this delay was attributable to Dr. Haga's "refusal to process" the prescription by another physician, despite plaintiff's requests.  (Complaint ¶¶ 88-89.)  This is not enough to allege deliberate indifference by Dr. Haga.  Plaintiff does not allege the nature of Dr. Haga's involvement with the prescription by another physician, *i.e.*, whether Dr. Haga's approval was necessary, or the reasons for his "refusal to process."   Moreover, plaintiff does not allege that he suffered further harm to his eyes as a result of the delay.

Accordingly, for all of these reasons, plaintiff's claim against Dr. Haga must be dismissed.

## VIII.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS McMAHON, MARHOOFER, ANDERSON, AND COX.

Plaintiff alleges that San Bernardino County Sheriff McMahon is "directly responsible for the employment" of all other defendants and that the duties of Deputy Captain Jon Marhoofer, "the C.J.M of H.D.D.C.," include the supervision and proper training of all H.D.D.C. deputies.  (Complaint ¶¶ 13, 16.)  In addition, plaintiff alleges that Sheriff McMahon, Deputy Captain Marhoofer, Lieutenant Anderson, and Sergeant Cox failed to act on his previous complaints of abusive treatment by deputies, and that this failure to

1   discipline and/or properly train the deputies led to the occurrence of the wrongful acts

2   alleged in the Complaint.  (Id. at ¶ 107.)

3       Supervisory personnel generally are not liable under Section 1983 on any theory of

4   respondeat superior or vicarious liability in the absence of a state law imposing such liability.

5   Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); Hansen v. Black, 885 F.2d 642,

6   645–46 (9th Cir. 1989).  A supervisory official may be liable under § 1983 only if the official

7   was personally involved in the constitutional deprivation, or if there was a sufficient causal

8   connection between the supervisor's wrongful conduct and the constitutional violation.

9   Crowley, 734 F.3d at 977; Hansen, 885 F.2d at 646.  "[S]upervisors can be held liable for:

10   1) their own culpable action or inaction in the training, supervision, or control of

11   subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is

12   made; or 3) for conduct that showed a reckless or callous indifference to the rights of

13   others."  Edgerly v. City and County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010)

14   (internal quotations and citation omitted).

15       Plaintiff's allegations regarding these defendants are far too conclusory to provide a

16   basis for Section 1983 liability.  Regardless of their title, government officials can only be

17   liable for their own misconduct, not the misconduct of their subordinates.  Iqbal, 556 U.S. at

18   677.  Plaintiff has not alleged in what respect the training and supervision of the deputies

19   involved in the May 6, 2014 incident and its aftermath was deficient, and how better training

20   and supervision would have prevented the wrongful conduct alleged in the Complaint.

21       To the extent plaintiff's claims rest on the supervisory defendants' inaction in the face

22   of his previous complaints, he does not allege the subject matter of these previous

23   complaints or their connection, if any, to the current incidents.  The Complaint does not

24   describe a situation where higher-level officials failed to take action despite being on notice

25   of ongoing or future violations.  Contrast Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)

26   (supervisory liability claims against sheriff were sufficient when plaintiff alleged that sheriff

27   failed to take action despite being given notice of numerous prior incidents involving inmate

28   death or injury, which were specifically described in the complaint) with Hydrick v. Hunter,

669 F.3d 937, 942 (9th Cir. 2012) (supervisory liability claims were insufficient when plaintiff did not allege specific policy implemented by defendants or specific events instigated by them that led to unconstitutional searches).  As currently alleged, plaintiff's claims against these defendants rest on no more than impermissible vicarious liability.

Accordingly, plaintiff's claims against McMahon, Marhoofer, Alexander, and Cox must be dismissed.

## IX.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE SHERIFF'S DEPARTMENT AND DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

Plaintiff has sued the Sheriff's Department and has asserted official capacity claims against some of the defendants.  (Complaint ¶¶ 5, 12-16.)

To allege a Section 1983 claim against a local governmental entity such as the County and the Sheriff's Department, plaintiff must allege not only a constitutional deprivation, but also a policy, custom, or practice of the Sheriff's Department that was the "moving force" of the constitutional deprivation.  Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008).  Under Section 1983, local governments are responsible only "for their *own* illegal acts" and are not vicariously liable for their employees' conduct.  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).  Plaintiffs who seek to impose Section 1983 liability on local governments must prove that "action pursuant to official municipal policy" caused their injuries.  Id. (quoting Monell, 436 U.S. at 691).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick, 131 S. Ct. at 1359; see Monell, 436 U.S. at 694.

Plaintiff has not identified any policy, custom, or practice of the Sheriff's Department that resulted in the use of pepper spray against him, the failure to provide prompt decontamination, the allegedly deficient medical care, or the other acts of which he complains.  Absent such allegations, he has not alleged a claim against the Sheriff's Department.  See Cameron v. Craig, 713 F.3d 1012, 1023 (9th Cir. 2013) (County entitled

to summary judgment because plaintiff did not identify "any custom or policy of the County that guided the deputies' use of force in the search and arrest).

An official capacity claim is merely another way of pleading a claim against the governmental entity of which the official is an agent.  Monell, 436 U.S. at 690 n.55; see also Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Consequently, plaintiff's claims against defendants in their official capacities are claims against the Sheriff's Department, and fail for the same reasons.

Accordingly, plaintiff's claims against the Sheriff's Department and defendants in their official capacities must be dismissed.

## X.     PLAINTIFF HAS NOT ALLEGED A FACTUAL BASIS FOR HIS CLAIMS AGAINST SULLIVAN, KELLY, HAMILTON, AND DE LOS SANTOS.

Plaintiff has named as defendants Deputies Sullivan, Kelly, Hamilton, and De Los Santos.  However, the Complaint contains no factual allegations regarding these deputies.  Plaintiff does not allege what they did that should subject them to liability.  See Iqbal, 556 U.S. at 678.  In fact, plaintiff does not even allege what claims he is alleging against them.  Accordingly, plaintiff's claims against these defendants must be dismissed.

*************

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document.  The Clerk is directed to provide plaintiff with a blank Central District of California civil rights complaint form, which plaintiff must fill out completely and resubmit.

1    **Plaintiff is admonished that, if he fails to file a First Amended Complaint by the**

2    **deadline set herein, the Court may recommend that this action be dismissed for**

3    **failure to prosecute and failure to comply with a Court order.**

4

5    DATED: <u>June 2, 2015</u>                              <u>     /s/ John E. McDermott     </u>
                                                              JOHN E. MCDERMOTT
6                                                             UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28